IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



ESTATE OF WILLIAM JOEL DIXON AND
DONNA DIXON, on Behalf of the Wrongful
Death Beneficiaries of William Joel Dixon

PLAINTIFFS

VERSUS

NO. 1:17cv2u3 LG-RHW

GEORGE COUNTY, CITY OF LUCEDALE,
AND CARMON SUE BRANNAN,
In Her Individual Capacity

DEFENDANTS

JURY TRIAL DEMANDED

## COMPLAINT

This is a civil action to recover actual, compensatory and punitive damages for

the Defendants' violations of the Plaintiff's Fourteenth Amendment right as a detainee

to adequate medical care. The following averments support this civil action:

## PARTIES

1. The Plaintiff, Estate of William Joel Dixon, is an estate administered by Donna

Dixon.

2. The Plaintiff, Donna Dixon, is an adult resident citizen of Lucedale, George

County, Mississippi. She brings this civil action on behalf of the other wrongful death

beneficiaries of William Joel Dixon:

3. The Defendant, George County, Mississippi, is a political subdivision of the

State of Mississippi. The Defendant George County, Mississippi may be served with

process by service upon its Chancery Clerk, Honorable Cammie Brannan Byrd, 355 Cox Street, Suite A, Ludedale, Mississippi 39452.

4. The Defendant, City of Lucedale, Mississippi, is a code charter incorporated municipality of the State of Mississippi. The Defendant City of Ludedale may be served with process by service upon its City Clerk, Kathy Johnson-Anderson, 5126 Main Street, Lucedale, Mississippi 39452.

5. The Defendant, Carmon Sue Brannan, is, upon information and belief, an adult resident citizen of George County, Mississippi. At the time of the events and occurrences related in this Complaint she was employed as the Healthcare Administrator and registered nurse at the George County Regional Correctional Facility ("GCRCF"). She may be served with process by service of a Complaint and Summons upon her at 1110 Turkey Fork Road, Lucedale, Mississippi 39452.

## JURISDICTION & VENUE

6. This Court has subject matter jurisdiction of this civil action pursuant to 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. 1343(a)(3) (Civil Rights).

7. Venue is proper in the Southern District of Mississippi, pursuant to 28 U.S.C. § 1391, since the Defendants reside in this judicial district, and a substantial part of the events and omissions giving rise to the claim occurred in this judicial district.

CAUSE OF ACTION

8. On, or about, September 17, 2014, the Decedent, William Joel Dixon, was arrested by officers with the City of Lucedale Police Department and transported to the GCRCF.

9. During the booking process, Joel Dixon informed the intake officer that he was an insulin-dependent diabetic.

10. This medical information was noted in a medical screening form and was noted in writing on Joel Dixon's computer-generated booking sheet.

11. The medical screening form and booking sheet were part of a packet of documents prepared for each arrestee, detainee, and inmate and provided to the Defendant Brannan by jail staff at the GCRCF.

12. At all times relevant to this civil action, the Defendant Brannan was employed by the Defendant George County as its Healthcare Administrator and a Registered Nurse.

13. At all times relevant to this civil action, the Defendant Brannan was delegated final policymaking authority, by the Defendant George County, for the adoption, implementation, and modification of healthcare policy at the GCRCF, and for the healthcare of arrestees, detainees, and inmates housed at the GCRCF.

14. At all times relevant to this civil action, the Defendant Brannan was the only

3

full-time Registered Nurse employed by the Defendant George County to provide healthcare to the arrestees, detainees and inmates at the GCRCF.

15. At all times relevant to this civil action, the Defendant Brannan was responsible for the healthcare and healthcare outcomes of approximately 360-380 arrestees, detainees, and inmates.

16. After Joel Dixon's arrest, the Defendant Brannan initiated a telephone call to Joel Dixon's mother, Donna Dixon.

17. During the Defendant Brannan's telephone conversation with Donna Dixon, they discussed Joel Dixon's insulin-dependent diabetes and the need to get his insulin to the jail.

18. After her conversation with the Defendant Brannan, on September 18, 2014, Donna Dixon sent her daughter to a pharmacy to purchase Joel Dixon some insulin for his use at the GCRCF.

19. That day, the insulin purchased for Joel Dixon was delivered to the GCRCF by Donna Dixon, logged in by the jail staff at the GCRCF, and placed in the booking area for the Defendant Brannan to make use of on Joel Dixon's behalf.

20. At the same time, a Licensed Practical Nurse, working under the direct supervision of the Defendant Brannan, was instructed to recover and bring to the GCRCF Joel Dixon's insulin which was in his lunch box in his car from when he had

been arrested by the Lucedale Police Department.

21. Joel Dixon routinely kept his insulin in his lunch box at work so that he had it available for use whenever he needed it.

22. A City of Lucedale police officer was tasked with going to the impound lot to retrieve Joel Dixon's insulin from the lunch box in his car.

23. That officer retrieved Joel Dixon's insulin from the lunch box in his car and delivered it to the GCRCF.

24. A jail staff member at the GCRCF received Joel Dixon's insulin from the Lucedale Police Officer and provided that officer with a receipt confirming receipt of the insulin for Joel Dixon.

25. During Joel Dixon's week-long detention at the GCRCF, despite the ready availability of his insulin the Defendant Brannan never administered insulin to Joel Dixon despite her subjective awareness of his insulin-dependent diabetes and obvious signs that his health was deteriorating and he was in medical distress.

26. The Defendant Brannan had a known history among jail staff and supervisory and management level employees at the GCRCF of failing to administer or inadequately administering medication, and specifically insulin, to arrestees, detainees, and inmates.

27. Jail staff members at the GCRCF provided the Defendant Brannan with direct

5

reports that Joel Dixon was in apparent medical distress and that his health was deteriorating.

28. The Defendant George County implemented and had in place a policy, practice, custom, or usage which prohibited jail staff at the GCRCF from acting on their personal observations of an arrestee's, detainee's, or inmate's serious medical condition and medical distress to summon emergency medical assistance outside of the confines of the GCRCF.

29. This policy, practice, custom, and usage of the Defendant George County constituted an objectively unreasonable condition of confinement and manifested deliberate indifference to the medical needs and health of Joel Dixon and other arrestees, detainees, and inmates.

30. The Defendant George County implemented and had in place a policy, practice, custom, or usage of failing to provide constitutionally adequate training to its jail staff in the recognition and proper handling of serious medical conditions of arrestees, detainees, and inmates at the GCRCF.

31. This policy, practice, custom, and usage of the Defendant George County constituted an objectively unreasonable condition of confinement and manifested deliberate indifference to the medical needs and health of Joel Dixon and other arrestees, detainees, and inmates.

32. Joel Dixon's medical condition steadily deteriorated throughout his confinement until on September 22, 2014, he was found by jail staff unconscious in the shower.

33. Prior to being found unconscious, the Defendant Brannan was informed of and personally aware of Joel Dixon's insulin-dependent diabetes and steadily deteriorating medical condition and deliberately failed to provide any medical treatment; failed to provide Joel Dixon with his insulin; failed to allow Joel Dixon to see a physician; and failed to allow Joel Dixon to transfer to a medical facility which could provide an appropriate level of care or any care.

34. The Defendant George County implemented and had in place a policy, practice, custom, or usage of providing substandard and inadequate medical care to arrestees, detainees, and inmates with serious medical conditions and medical distress at the GCRCF.

35. This policy, practice, custom, and usage of the Defendant George County constituted an objectively unreasonable condition of confinement and manifested deliberate indifference to the medical needs and health of Joel Dixon and other arrestees, detainees, and inmates at the GCRCF.

36. The Defendant George County implemented and had in place a policy, practice, custom, or usage of failing to provide or inadequately providing necessary

7

prescription medications, including insulin, to arrestees, detainees, and inmates with serious medical conditions and medical distress at the GCRCF.

37.  This policy, practice, custom, and usage of the Defendant George County constituted an objectively unreasonable condition of confinement and manifested deliberate indifference to the medical needs and health of Joel Dixon and other arrestees, detainees, and inmates at the GCRCF.

38.  The Defendant George County implemented and had in place a policy, practice, custom, or usage of failing to refer arrestees, detainees, and inmates at the GCRF with a serious medical condition or medical distress to a physician in order to properly examine, assess, diagnose, and treat the arrestee, detainee, or inmate with a serious medical condition or medical distress.

39.  This policy, practice, custom, and usage of the Defendant George County constituted an objectively unreasonable condition of confinement and manifested deliberate indifference to the medical needs and health of Joel Dixon and other arrestees, detainees, and inmates at the GCRCF.

40.  The Defendant George County implemented and had in place a policy, practice, custom, or usage of failing to refer or transfer arrestees, detainees, and inmates at the GCRF with a serious medical condition or medical distress to medical facilities in order to provide appropriate and adequate medical care and treatment to arrestees,

8

detainees, or inmates with a serious medical condition or medical distress.

41. This policy, practice, custom, and usage of the Defendant George County constituted an objectively unreasonable condition of confinement and manifested deliberate indifference to the medical needs and health of Joel Dixon and other arrestees, detainees, and inmates at the GCRCF.

42. At or around the time Joel Dixon was found unconscious in the shower, he complained to jail staff and the Defendant Brannan of weakness, an inability to keep his food down, and vomiting.

43. In response to hearing these and other medical complaints from jail staff and a known insulin-dependent diabetic whose health was visibly deteriorating, the Defendant Brannan responded to and dismissed these complaints by saying that Joel Dixon was "faking" or "detoxing."

44. After being found unconscious in the shower, the Defendant Brannan ordered that Mr. Dixon be placed in the Special Treatment Unit ("STU") at the GCRCF.

45. As designed the STU is a nine-cell section of the GCRCF designed to house one arrestee, detainee, or inmate per cell in order, ostensibly, to receive individualized monitoring and medical treatment by the GCRCF's nurse.

46. Despite being placed in the STU, Joel Dixon did not receive any individualized monitoring or medical treatment from the Defendant Brannan.

47.  Throughout his detention, the Defendant Brannan checked Joel Dixon's blood sugar on only one occasion despite the fact that Joel Dixon's blood sugar should have been monitored at least twice a day and despite her subjective awareness of Joel Dixon's serious medical condition and deteriorating medical condition.

48.  The Defendant George County implemented and had in place a policy, practice, custom, or usage of providing substandard and inadequate medical care, including failing to provide adequate medication, to arrestees, detainees, and inmates with serious medical conditions and medical distress in the STU at the GCRCF.

49.  This policy, practice, custom, and usage of the Defendant George County constituted an objectively unreasonable condition of confinement and manifested deliberate indifference to the medical needs and health of Joel Dixon and other arrestees, detainees, and inmates at the GCRCF.

50.  During Joel Dixon's detention in the STU from September 22, 2014 until his death at the STU on September 24, 2014, his intake form showed that he had eaten no food at breakfast, lunch, or dinner, on September 22, 2014 and September 23, 2014, and ate no breakfast the morning of his death.

51.  The Defendant Brannan was subjectively aware of Joel Dixon's failure to eat, but took no action to provide him with adequate or any medical care, to refer him to a physician, or to refer him to a medical facility for treatment despite her subjective

10

awareness of his serious medical condition and deteriorating health.

52. The Defendant George County implemented and had in place a policy, practice, custom, and usage of delegating policymaking authority to the Defendant Brannan with respect to the adoption, implementation, and modification of healthcare policy at the GCRCF, and for the healthcare of arrestees, detainees and inmates housed at the GCRCF.

53. This policy, practice, custom, and usage of the Defendant George County constituted an objectively unreasonable condition of confinement and manifested deliberate indifference to the medical needs and health of Joel Dixon and other arrestees, detainees, and inmates housed at the GCRCF.

54. The Defendant George County implemented and had in place a policy, practice, custom, and usage of authorizing and allowing the Defendant Brannan to exceed the scope of her practice as a Registered Nurse, in contravention of national and Mississippi nursing standards, by authorizing and allowing her to operate without adequate or any supervision by a physician, and by authorizing and allowing her to diagnose and treat or fail to treat without direct physician supervision arrestees, detainees, and inmates housed at the GCRCF.

55. This policy, practice, custom, and usage of the Defendant George County constituted an objectively unreasonable condition of confinement and manifested

11

deliberate indifference to the medical needs and health of Joel Dixon and other

arrestees, detainees, and inmates housed at the GCRCF.

56. From September 22, 2014 through September 24, 2014, jail staff at the GCRCF

were subjectively aware of Joel Dixon's serious medical condition, his deteriorating

medical condition, and his medical distress but uniformly failed to contact an outside

emergency medical provider or provide emergency medical care to Joel Dixon.

57. The statements made by jail staff at the GCRCF to the Defendant Brannan

regarding Joel Dixon's deteriorating medical condition and his medical distress were

ignored by the Defendant Brannan despite her subjective awareness of Joel Dixon's

insulin-dependent diabetes, deteriorating medical condition, and medical distress.

58. The Defendant George County implemented and had in place a policy,

practice, custom, and usage of maintaining a jail staff which lacked the authority to

transfer an arrestee, detainee, and inmate with a serious medical condition at the

GCRCF to a proper medical facility for adequate treatment.

59. This policy, practice, custom, and usage of the Defendant George County

constituted an objectively unreasonable condition of confinement and manifested

deliberate indifference to the medical needs and health of Joel Dixon and other

arrestees, detainees, and inmates housed at the GCRCF.

60. From the evening of September 23, 2014 until the time of his death on

September 24, 2014, jail staff observed Joel Dixon laying on the floor of his cell, unable to eat, unable to verbalize, and seemingly too weak to be able to move.

61.  The morning of September 24, 2017, Joel Dixon lay on the floor of his cell. Despite the Defendant Brannan's subjective awareness of Joel Dixon's insulin-dependent diabetes, serious medical condition, and obvious medical distress, she failed to provide Joel Dixon with any medical treatment or contact an outside medical facility to provide him with medical treatment.

62.  Later in the morning of September 24, 2017, jail staff entered Joel Dixon's cell and found him unresponsive.

63.  Jail staff did not summon emergency medical care for Joel Dixon, even at that time, but called for the Defendant Brannan to come to Joel Dixon's cell.

64.  Upon her arrival at Joel Dixon's cell, the Defendant Brannan informed jail staff to call for an ambulance and determined that Joel Dixon was dead.

65.  The Defendant Brannan failed to provide even minimally adequate medical care to Joel Dixon for his known serious medical condition and medical distress manifesting deliberate indifference to his safety, health, and life.

66.  The Defendant Brannan failed to provide even minimally adequate monitoring and examining of Joel Dixon's known insulin-dependent diabetes, serious medical condition, medical deterioration, and medical distress manifesting deliberate

indifference to his safety, health, and life.

67.  The Defendant George County implemented and had in place a policy, practice, custom, and usage of denying arrestees, detainees, and inmates adequate care for an indefinite period of time with the seeming hope that they would heal themselves without medical intervention.

68.  This policy, practice, custom, and usage of the Defendant George County constituted an objectively unreasonable condition of confinement and manifested deliberate indifference to the medical needs and health of Joel Dixon and other arrestees, detainees, and inmates housed at the GCRCF.

69.  During and throughout his detention at the GCRCF, Joel Dixon, as an arrestee of the Defendant City of Lucedale, was held at the GCRCF subject to an Interlocal Agreement, between the Defendant George County and the Defendant City of Lucedale, which provided for all aspects of the custody and care of arrestees, detainees, and inmates at the GCRCF.

70.  The Interlocal Agreement between the Defendant George County and the Defendant City of Lucedale constituted and created a joint venture between these two Defendants with respect to the detention of individuals subject to arrest on charges emanating from the Defendant City of Lucedale.

71.  The Defendant Lucedale as a matter of municipal policy as evidenced by its

14

adoption of the Interlocal Agreement with the Defendant George County delegated its policymaking authority regarding the care and treatment of arrestees from the Defendant City of Lucedale to George County.

72.   The policy deficiencies and failures of the Defendant George County in this Complaint are fully attributable to the Defendant City of Lucedale through its adoption of the interlocal agreement and delegation of policymaking authority regarding the detention of individuals subject to arrest on charges emanating from the Defendant City of Lucedale.

73.   The Defendant City of Lucedale implemented and had in place a policy, practice, custom, and usage of failing to monitor and supervise the adequacy of the care and the treatment of its arrestees by the Defendant George County.

74.   This policy, practice, custom, and usage of the Defendant City of Lucedale constituted an objectively unreasonable condition of confinement and manifested deliberate indifference to the medical needs and health of Joel Dixon and other arrestees, detainees, and inmates of the Defendant City of Lucedale housed at the GCRCF.

75.   At all times relevant to this civil action the Defendant Brannan acted under color of law.

76.   At all times relevant to this civil action the Defendant Brannan acted with

reckless disregard for Joel Dixon's federally protected rights.

77. At all times relevant to this civil action the unconstitutional conditions of confinement to which Joel Dixon was subjected by the Defendant George County were objectively unreasonable and manifested deliberate indifference to Joel Dixon's safety, health, and life.

78. At all times relevant to this civil action the unconstitutional policies to which Joel Dixon was subjected by the Defendant George County were objectively unreasonable and manifested deliberate indifference to the known serious medical condition of Joel Dixon.

79. The Defendant George County and the Defendant City of Lucedale adopted constitutionally inadequate policies and procedures and failed to adopt constitutionally adequate policies and procedures to adequately monitor, detect, treat and respond to the known obvious serious medical needs of arrestees, detainees, and inmates.

80. The Defendant George County and the Defendant City of Lucedale failed to provide jail staff with even minimal training and authority to monitor, detect, and respond to the known obvious serious medical needs of arrestees, detainees, and inmates.

81. The Defendant George County and the Defendant City of Lucedale maintained a policy, practice, custom or usage which authorized and/or mandated

16

and/or condoned and/or ratified the denial of medical care to arrestees, detainees, and inmates.

82.  The aforementioned unconstitutional acts and omissions of the Defendant George County and the Defendant City of Lucedale manifested deliberate indifference to the rights of Joel Dixon and other arrestees, detainees, and inmates.

83.  As a direct and proximate result of the unconstitutional acts and omissions of the Defendant George County and the Defendant City of Lucedale, these defendants violated Joel Dixon's clearly established constitutional rights guaranteed under the Due Process Clause of the Fourteenth Amendment to adequate medical care resulting in great suffering on Joel Dixon's part and his preventable and untimely death.

84.  The Defendant Brannan failed to provide Joel Dixon with adequate or any medical care for his insulin-dependent diabetes.

85.  The Defendant Brannan was subjectively aware of a substantial risk of serious harm to Joel Dixon but through her unconstitutional acts and omissions manifested deliberate indifference towards Joel Dixon.

86.  As a direct and proximate result of the unconstitutional acts and omissions of the Defendant Brannan, Joel Dixon's clearly established constitutional rights guaranteed under the Due Process Clause of the Fourteenth Amendment to adequate medical care were violated resulting in great suffering on Joel Dixon's part and his preventable and

untimely death.

PRAYER

87.  Plaintiffs pray for the following damages in an amount to be determined by

the trier fact and for other relief as follows:

      1.  Damages for Joel Dixon's future loss of income, medical expenses, and

funeral expenses;

      2.  Damages for Joel Dixon's physical pain and suffering;

      3.  Damages for the loss of enjoyment of life which Joel Dixon suffered and

the suffering occasioned by his recognition of impending death at the hands of the

Defendants;

      4.  compensatory damages for emotional distress, suffering, and mental

anguish which Joel Dixon suffered;

      5.  compensatory damages to Joel Dixon's wrongful death beneficiaries for

the loss of affection and companionship of their father;

      6.  punitive damages against the individual Defendant Brannan;

      7.  reasonable attorney's fees; and

      8.  reasonable costs and expenses.

Respectfully submitted, this the *22* day of September, 2017.

                                 _____

                                   JAMES K. WETZEL, ESQ.

                                   MS BAR NO. 7122

                                   GARNER J. WETZEL, ESQ.

                                   MS BAR NO. 103596

                                   VICTOR I. FLEITAS

                                   MS BAR NO. 10259

Wetzel Law Firm
1701 24th Avenue
Gulfport, Mississippi 39501
228.864.6400 / Telephone
228.863.1993 / Facsimile
www.wetzellawfirm.com
jkwetzel@wetzellawfirm.com
gjwetzel@wetzellawfirm.com / E-mail

Victor I. Fleitas, P.A.
452 North Spring Street
Tupelo, Mississippi 38804
662.840.0270 / Telephone
662.840.1047 / Facsimile
fleitasv@bellsouth.net / E-mail

Attorneys for Plaintiffs